# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| LETITIA MICHELE YEAGER,<br><br>                  Plaintiff,<br><br>v.<br><br>KOHLER CO.,<br><br>                  Defendant. | Case No. 22-CV-65-JPS<br><br>**ORDER** |

On January 18, 2022, Plaintiff Letitia Michele Yeager ("Plaintiff"), proceeding pro se, filed this action alleging that Defendant Kohler Co. ("Defendant") violated Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, and the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12112, *et seq.* ECF No. 1. On January 25, 2022, the Court screened Plaintiff's complaint and ordered her to file an amended complaint in accordance with the terms of that order. ECF No. 5. On February 18, 2022, Plaintiff filed an amended complaint. ECF No. 8. On April 13, 2022, the Court screened the amended complaint, noting that Plaintiff had provided a "copy of her right-to-sue letter from the Equal Employment Opportunity Commission." ECF No. 10. The Court allowed Plaintiff's claims to proceed past screening. Accordingly, the amended complaint at ECF No. 8 serves as the operative complaint.

On June 3, 2022, Defendant filed a waiver of service. ECF No. 14. On July 5, 2022, Defendant filed a motion to dismiss. ECF No. 19. On August 30, 2022, the Court ordered Plaintiff to respond to the motion within 21 days of the Court's order and warned that failure to do so would result in

dismissal of her action for failure to prosecute. ECF No. 21. On September 16, 2022—within the time allowed by the Court—Plaintiff filed a response to the motion to dismiss. ECF No. 22. On September 30, 2022, Defendant filed a reply. ECF No. 23. The motion is fully briefed. For the reasons discussed herein, the Court will grant in part and deny in part the motion.

1.  **FACTUAL BACKGROUND**

Plaintiff alleges that she was employed as an Assembly to Order Operator for Defendant since around September 2, 2014. ECF No. 8 at 5. At the time of Defendant's alleged conduct, Plaintiff was on restrictions from her doctor due to a work-related injury that had occurred on August 17, 2021. *Id*. at 7. She identifies that injury as a "pectoralis muscle strain." *Id*. at 8.

While performing light duty work, Plaintiff claims she requested a stool and was told by her supervisor/foreman, Thomas Hameister ("Hameister"), that she needed to stand. *Id*. at 5, 7. She was denied a stool while "[o]ther Caucasian coworkers who worked in the same department and position but on a different line were able to sit on a stool while performing the same job duties." *Id.* at 5. Hameister told Plaintiff there was "no reason" why she should be sitting and told her he would be speaking with Human Resources about her "not following directions." *Id*. at 7.

Later that same day, Plaintiff was sent to speak to Human Resources about the issue. *Id*. She spoke with the supervisor, Kate Stoegal ("Stoegal"). *Id*. Plaintiff explained about her medical condition and the restrictions from her doctor and expressed concern as to the differential treatment she was receiving. *Id.* Stoegal took the blame, attributing the differential treatment to her "inconsistencies" regarding whether employees could or could not

sit on stools while working. *Id*. Plaintiff claims that an individual named Nicole Pecore ("Pecore") told her she could continue to use the stool "until an ergonomic assessment was done." *Id.*

The next day, August 27, 2021, Plaintiff came into work and the stool was gone. *Id*. Plaintiff asked Hameister about it and he told her he had "no knowledge of where it went." *Id*. Later that day, Stoegal requested that Plaintiff meet with her in her office. *Id*. At that meeting, a union representative was present along with Hameister. *Id*. Plaintiff was then informed by Stoegal that she was no longer able to "use the chair" because it would "cause more pressure" on Plaintiff's spine. *Id*. Plaintiff thereafter returned to stand at work, which continued to cause her pain. *Id*.

Plaintiff attests that she "had to retrieve a doctors's [sic] statement in order to have an accommodation for a stool[,] which was not required of other coworkers." *Id*. at 5. Plaintiff also claims that she was the target of "more frequent audits" from this incident onward. *Id.* at 7. Plaintiff writes that she was disciplined on August 26, 2021; September 20, 2021; and October 11, 2021. *Id*. at 5. She was also denied a half day off on August 27, 2021 and was "accessed attendance points while [] quarantined." *Id*. She was terminated on November 24, 2021. *Id*. at 7.

On September 1, 2021, prior to her termination, Plaintiff "submitted a charge with the EEOC." *Id*. at 8. Therein, she alleged that she was "discriminated against on the basis of race (Black) in violation of Title VII of the Civil Rights Act of 1964, as amended." *Id*. at 5. She did not therein expressly invoke the ADA, but she wrote that she "had to retrieve a doctors's [sic] statement in order to have an accommodation for a stool[,] which was not required of other coworkers." *Id*. She also did not therein reference her termination because, at the time of her filing the charge of

discrimination with the EEOC, she had not yet been terminated. Plaintiff received a Notice of Right to Sue letter on November 10, 2021. *Id*. at 8. She was terminated by Defendant 14 days later. *Id*. at 7.

**2.     MOTION TO DISMISS**

   **2.1    General Standards**

District courts have a "special responsibility to construe *pro se* complaints liberally and to allow ample opportunity for amending the complaint when it appears that by so doing the *pro se* litigant would be able to state a meritorious claim." *Kiebala v. Boris*, 928 F.3d 680, 684 (7th Cir. 2019) (internal citation omitted). In addition to viewing a pro se complaint with an "understanding eye," a district court "may point a *pro se* litigant toward the correct procedure or 'take appropriate measures to permit the adjudication of *pro se* claims on the merits.'" *Id.* (internal citation omitted). At the same time, however, district courts are not charged with seeking out legal "issues lurking within the confines" of the pro se litigant's pleadings. *Id*. at 684–85 (internal citation omitted).

On a motion to dismiss, the district court accepts as true the plaintiff's factual allegations. *Harris v. Honey*, No. 90-3037, 1991 U.S. App. LEXIS 27193, at *5 (7th Cir. 1991) (internal citation omitted). "[A]ll such facts, as well as the reasonable inferences that follow, are viewed in the light most favorable to the plaintiff." *Teague v. United States Postal Serv.*, No. 94-C-2152, 1997 U.S. Dist. LEXIS 20864, at *6 (N.D. Ill. Dec. 23, 1997) (internal citation omitted).

To state a claim, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must give "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 555 (2007). The allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level[.]" *Kubiak v. City of Chicago*, 810 F.3d 476, 480 (7th Cir. 2016) (internal citation omitted). A plausible claim is one with "enough facts to raise a reasonable expectation that discovery will reveal evidence supporting the plaintiff's allegations." *Bell*, 550 U.S. at 556.

In deciding a Federal Rule of Civil Procedure 12(b)(6) motion, the Court does not ask "did these things happen;" instead, "the proper question to ask is . . . '*could* these things have happened.'" *Olson v. Champaign County*, 784 F.3d 1093, 1099 (7th Cir. 2015) (internal citations omitted). "[T]he court's skepticism is best reserved for later stages of the proceedings when the plaintiff's case can be rejected on evidentiary grounds." *Hartman v. Gilead Scis., Inc.*, 536 F.3d 1049, 1057 (9th Cir. 2008).

### 2.2 Exhaustion of Administrative Remedies for Disability-Related Claim(s)

Defendant argues that Plaintiff "failed to bring a disability discrimination claim in her Equal Employment Opportunity Commission Charge of Discrimination" and that she "failed to exhaust her administrative remedies related to this [ADA] claim." ECF No. 19. Because Plaintiff essentially confirms that conclusion in her response, the Court will dismiss Plaintiff's disability-related claims.

A plaintiff seeking to proceed under Title VII must file a charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC") within 300 days of the day of the alleged discrimination. 42 U.S.C. § 2000e-5; *Conner v. Ill. Dep't of Nat. Res.*, 413 F.3d 675, 680 (7th Cir. 2005). The same is true for a plaintiff seeking to proceed under the ADA. *Hoeller v. Carroll Univ.*, No. 19-CV-850-JPS, 2019 U.S. Dist. LEXIS 205995, at *5 (E.D.

Page 5 of 14
Case 2:22-cv-00065-JPS   Filed 11/28/22   Page 5 of 14   Document 24

Wis. Nov. 27, 2019). "[A] plaintiff is barred from raising a claim in the district court that had not been raised in his or her EEOC charge unless the claim is reasonably related to one of the EEOC charges and can be expected to develop from an investigation into the charges actually raised." *Whitaker v. Milwaukee County*, 772 F.3d 802, 812 (7th Cir. 2014) (internal citations omitted). In order for claims to be reasonably related to one another, there must be "a factual relationship between them." *Id*. (quoting *Cheek v. W. & S. Life Ins. Co*., 31 F.3d 497, 501 (7th Cir. 1994). "This means that the EEOC charge and the complaint must, at minimum, 'describe the *same conduct* and implicate the *same individuals*.'" *Id*.[1] "To discern the scope of the EEOC charges, the Seventh Circuit instructs district courts to ask, 'what EEOC investigation could reasonably be expected to grow from the original complaint[?]'" *Hoeller*, 2019 U.S. Dist. LEXIS 205995, at *10 (internal citation omitted).

It is true that in performing this inquiry, "courts should not punish technical defects like a failure to check a particular box on an EEOC form; rather, they must view the charge as a whole and decide whether it contains

---

[1] Defendant argues that the "administrative charge also fails to direct any attention towards Kate Stoegal or Thomas Hameister. She does not provide their names, let alone enough information to implicate either as the person who discriminated against her during her employment." ECF No. 23 at 3. The Court disagrees. Again, the EEOC charge and the complaint need only implicate the same individuals—the charge need not expressly identify those individuals. Plaintiff's EEOC charge indicates that she works as an Assembly to Order Operator, that she was denied a stool by her "supervisor/foreman," and that she was thereafter officially disciplined. ECF No. 8 at 5. These facts are sufficient to allow Defendant to determine which employees are implicated—an employee working as a supervisor or foreman over Plaintiff as an Assembly to Order Operator during the relevant period, and an employee who was responsible for implementing discipline over those working as Assembly to Order Operators during the relevant period.

'facts that would reasonably alert the EEOC, or [the employer] for that matter, to the possibility of [a particular theory of] discrimination.'" *Id*. at *11 (internal citation omitted). "This is consistent with the purpose of the exhaustion requirement, which was created to give the employer 'some warning of the [complained-of] conduct' and afford 'the EEOC and the employer an opportunity to settle the dispute through conference, conciliation, and persuasion.'" *Id*. (internal citations omitted).

But a "failure to accommodate claim is separate and distinct from a claim of discriminatory treatment under the ADA" as a matter of law. *Whitaker*, 772 F.3d at 813 (internal citation omitted). "[T]he two types of claims are analyzed differently under the law." *Id*. Therefore, they are not generally considered to be "like or reasonably related to one another, and one cannot expect a failure to accommodate claim to develop from an investigation into a claim that an employee was terminated because of a disability." *Id*. (internal citation omitted). The consequence of this is that a claim of discriminatory treatment under the ADA must typically be raised specifically and separately from a failure to accommodate claim. Several courts in the Seventh Circuit have interpreted this, however, "not to state a bright-line rule that failure to accommodate claims can *never* be 'reasonably related' to a disability discrimination claim stated in an EEOC charge." *Love v. First Transit, Inc*., No. 16-cv-2208, 2017 U.S. Dist. LEXIS 37716, at *7 (N.D. Ill. Mar. 16, 2017).

Plaintiff, proceeding pro se, did not expressly invoke the ADA in her charge of discrimination, while she did expressly invoke Title VII for race discrimination. ECF No. 8 at 5. Plaintiff also failed to check the box indicating discrimination based on disability, checking only the box indicating race discrimination. *Id*. While Plaintiff's description of the

Page 7 of 14
Case 2:22-cv-00065-JPS   Filed 11/28/22   Page 7 of 14   Document 24

circumstances of her claims appears to focus on race discrimination, Plaintiff also mentions that she "had to retrieve a doctors's [sic] statement in order to have an accommodation for a stool[,] which was not required of other coworkers." *Id*. This appears to be a reference to her claimed medical disability and Defendant's treatment of Plaintiff relating thereto.

Nevertheless, the Court must grant Defendant's motion to dismiss to the extent it seeks dismissal of the disability-related claims because Plaintiff herself concedes in her response that she was not bringing a disability discrimination claim. In Plaintiff's response, she writes that "[t]he Defendant's motion stated the Plaintiff did not file a claim of disability discrimination. The Plaintiff filed a racial discrimination complaint as a result of racially motivated acts of Kate Stoegal, and Thomas Hameister was based on race, not a discriminatory act of one's disability." ECF No. 22 at 2. She describes her action as one involving only allegations of "racial discrimination. *Id*. at 1. Regrettably, Plaintiff's response does nothing more than damage her own prospects.

The Court would not fault Plaintiff for failing to check the applicable box and for failing to cite to the ADA. *See Hoeller*, 2019 U.S. Dist. LEXIS 205995, at *11. The Court would also not fault her for not describing her claims with utmost sophistication and clarity. But the Court cannot ignore what appears to be concurrence from Plaintiff that she has not raised a claim of disability discrimination and apparently did not intend to do so. Accordingly, the Court will grant Defendant's motion to the extent that it seeks dismissal of Plaintiff's disability-related claims.[2]

---

[2] "Dismissal for failure to exhaust is without prejudice and so does not bar the reinstatement of the suit unless it is too late to exhaust . . . ." *Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002) (internal citation omitted). "In contrast,

### 2.3 Failure to Exhaust Administrative Remedies for Termination Claim

Defendant also argues that "[t]he allegations in the Complaint related to Plaintiff's termination must also be dismissed because her Charge predates, and therefore does not cover, her termination." ECF No. 20 at 4.

As noted previously, at the time that Plaintiff submitted her charge of discrimination to the EEOC, she had not been terminated. Nor had she been terminated at the time that the EEOC granted her a Right to Sue letter. She was, however, terminated roughly two weeks later. ECF No. 8 at 7.

As noted previously, a "plaintiff is barred from raising a claim in the district court that had not been raised in his or her EEOC charge *unless* the claim is reasonably related to one of the EEOC charges and can be expected to develop from an investigation into the charges actually raised." *Whitaker*, 772 F.3d at 812 (internal citations omitted) (emphasis added). In *Matson v. Sanderson Farms, Inc.*, the Southern District of Texas wrote that "[w]hile the EEOC charge does not mention the October 11 firing, which happened on the day [Plaintiff] filed the charge, these allegations are 'like' and 'related to' the allegations in the charge and emerged on the date the charge was filed." 388 F. Supp. 3d 853, 877 (S.D. Tex. 2019). The Court believes this may be true here—Plaintiff's termination two weeks after receiving her Notice of Right to Sue letter may plausibly be "reasonably related" to the allegations raised in Plaintiff's EEOC charge. *See Whitaker*, 772 F.3d at 812.

---

dismissal of a suit for failure to state a claim is always with prejudice and so always precludes reinstatement." *Id*. Defendant seeks dismissal of Plaintiff's claim of disability discrimination on both of these grounds. ECF No. 19. Interpreting the filings, including Plaintiff's response, in the light most favorable to Plaintiff (as the Court must do in light of Plaintiff's pro se status), the Court will consider the dismissal to be one without prejudice for failure to exhaust.

Plaintiff was terminated roughly two weeks after receiving her Right to Sue letter from the EEOC. The Court is obligated at this stage to make all reasonable inferences in favor of Plaintiff. Plaintiff alleged in the EEOC charge that after she complained about the denial of the stool, she became subject to discipline on various occasions, was denied vacation time, and was "accessed attendance points" while quarantined. ECF No. 8 at 5. She followed her list of these circumstances with the statement that she "believe[s] [she] was discriminated against" by her employer. *Id*. Clearly, Plaintiff suspects the disciplinary action and unfavorable time-off decision to which she was subjected were linked to Defendant's alleged discrimination and her complaint thereof. Plaintiff adds to this list in her amended complaint a reference to her termination. *Id*. at 7 ("I became the target of more frequent audits, my vacation was denied, and lastly I was terminated on Nov. 24th, 2021."). Moreover, Plaintiff attests that she is the "only African-American in [her] department." *Id*. at 4. Plaintiff had worked for Defendant since September of 2014—a period of nearly seven years. The fact that Plaintiff retained her employment with Defendant for nearly seven years and was then terminated within weeks of her complaining about discrimination allows for the reasonable inference at this time that her termination was related thereto.

In a footnote, Defendant writes that "[f]or the same reasons, Plaintiff's allegations that she was 'target of more frequent audits' and that her 'vacation was denied' should be dismissed." ECF No. 20 at 6 n.2. The Court disagrees. In her EEOC charge, Plaintiff wrote that she was "denied a half day off." ECF No. 8 at 5. The Court assumes, for purposes of this motion at least, that that is merely another way of stating that she was denied vacation time. Just because Plaintiff did not allege in her complaint

these circumstances with the same words as she used in her EEOC charge does not mean that they were not therein raised. And Plaintiff referred in her EEOC charge to various instances of general "discipline[]." ECF No. 8 at 5. The Court cannot say at this juncture that being the "target of more frequent audits" does not fall into one of those instances of general "discipline[]." *Id.* at 5, 7.

The Court reasonably infers that the unfavorable actions to which Plaintiff was subject are suspected by Plaintiff to have occurred because of her race and/or her complaints regarding discrimination. This is an entirely plausible suspicion for purposes of the pleading stage. Nothing in the record at this time suggests otherwise. The Court has nothing before it at present indicating that these unfavorable actions—including the termination—were taken against Plaintiff for reasons unrelated to her claims of discrimination. Plaintiff includes her termination in the list of consequences as an outgrowth or continuation of the treatment to which she was subjected by Defendant following the incident with the stool on August 26, 2021. Accordingly, to the extent that Defendant seeks dismissal of Plaintiff's claims related to her termination, the Court will deny that request.

### 2.4 Adverse Employment Action

Defendant also argues that Plaintiff's claims should be dismissed because she "has not alleged that she suffered an adverse employment action that is sufficiently material to establish a *prima facie* case of discrimination." ECF No. 19.

As part of its prima face case of discrimination, the plaintiff must show a materially adverse employment action. *Rhodes v. Ill. Dept. of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004). The Seventh Circuit has defined an adverse

employment action as a "materially adverse change in the terms and conditions of employment [that is] more disruptive than a mere inconvenience or an alteration of job responsibilities." *Yan v. Bd. of Regents*, No. 05-C-16-C, 2005 U.S. Dist. LEXIS 19830, at *37 (W.D. Wis. Sep. 12, 2005) (quoting *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993)). This definition is liberal, but not without limits. *Id.* (citing *Daryl L. Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003)). "When employers change an employee's work conditions 'in a way that subjects him to a humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alteration in his workplace environment'—the classic case being that of the employee whose desk is moved into a closet—the employee suffers an adverse employment action." *Id.* at *38.

The actions allegedly taken by Defendant against Plaintiff include deprivation of time-off/vacation; denial of a stool; increased targeting of audits; "accessed attendance points," ECF No. 8 at 5; multiple days involving general "discipline[];"and ultimately, termination. Not all of these actions constitute adverse employment actions.

Indisputably, termination constitutes an adverse employment decision. The same cannot be said of the denial of vacation time, however. Denial of a half-day off does not rise to the level of a "humiliating, degrading, unsafe" or otherwise significantly negative action. *Yan*, 2005 U.S. Dist. LEXIS 19830, at *38; *see also Beverly v. Kaupas*, 2008 U.S. Dist. LEXIS 15570, at *49 (N.D. Ill. Feb. 29, 2008) ("[Plaintiff's] grievances associated with Bradley's denial of her . . . scheduled vacation days [] and comp time simply do not suffice."); *Rhodes*, 359 F.3d at 505 (denial of personal days is not an adverse employment action). It is also not clear from Plaintiff's allegations whether she was necessarily entitled to that half-day off in the

Page 12 of 14
Case 2:22-cv-00065-JPS   Filed 11/28/22   Page 12 of 14   Document 24

first place. Regardless, the denial of Plaintiff's requested half-day off does not constitute an adverse employment action.

Second, Plaintiff was made to stand rather than being allowed to sit on the stool. She does not allege that the stool was strictly necessary for her to perform her job but alleges that performing her job without the stool or a similar seat caused her pain because of the injury from which she was suffering. ECF No. 8 at 7. Removal of a piece of equipment that facilitates an employee's performance but on which they do not strictly depend, and the use of which does not entitle them to a higher rate of pay, does not constitute an adverse employment action. *See Sawyer v. Nicholson*, No. 06-CV-5907, 2010 U.S. Dist. LEXIS 115969, at *68–69 (N.D. Ill. Nov. 1, 2010); *Tarochione v. Roberts Pipeline, Inc.*, 62 F. Supp. 3d 821, 830 (N.D. Ill. 2014). Plaintiff has not alleged facts allowing the Court to infer that the deprivation of the stool made her work environment humiliating, degrading, or unsafe. Forcing Plaintiff to stand certainly frustrated Plaintiff and caused her physical discomfort, but it does not appear to have amounted to an adverse employment action.

Third, increased targeting of Plaintiff for audits may constitute an adverse employment action. The Court does not have sufficient information at this time to say that it cannot. The same is true for Plaintiff's claim of unspecified discipline on several listed dates and "accessed attendance points." ECF No. 8 at 5. As to the latter, the Court does not know to what this refers. It is not clear whether these instances of unfavorable conduct towards Plaintiff constitute mere inconveniences or amount to something more significant. Defendant does not argue that these claims should be dismissed for failure to constitute adverse employment actions nor for lack of specificity. Accordingly, the Court will refrain from dismissing them at

this time. The Court anticipates that it, and the parties, will benefit from clarification as to these specific allegations through discovery. After further clarification as to the scope and specifics of these actions, the Court may reconsider them—and whether they constitute adverse employment actions—at a later date.

### 3. CONCLUSION

By concluding herein that Plaintiff's race discrimination claims under Title VII survive the pleading stage, the Court is not determining that the events indeed occurred as Plaintiff alleges. Instead, the Court has merely concluded that the events alleged *may* plausibly have occurred as Plaintiff alleges. *See Olson*, 784 F.3d at 1099. For the reasons discussed herein, the Court will grant Defendant's motion to the extent that it seeks dismissal of any disability-related claims. The Court will deny the motion to the extent that it seeks dismissal of Plaintiff's race discrimination claims.

Accordingly,

**IT IS ORDERED** that Defendant's motion to dismiss, ECF No. 19, be and the same is hereby **GRANTED in part and DENIED in part**; and

**IT IS FURTHER ORDERED** that Plaintiff's claim of disability-based discrimination, including that which falls under the Americans with Disabilities Act, ECF No. 8 at 2, be and the same is hereby **DISMISSED without prejudice**.

Dated at Milwaukee, Wisconsin, this 28th day of November, 2022.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge